# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| LANDMARK AMERICAN INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 15 C 1785 |
| DEERFIELD CONSTRUCTION, INC., and SHAWN GRAFF, | ) ) ) ) | Chief Judge Rubén Castillo |
| Defendants. | ) ) ) | |
| DEERFIELD CONSTRUCTION, INC., and SHAWN GRAFF, | ) ) ) ) | |
| Third-Party Plaintiffs, | ) ) | |
| v. | ) ) | |
| AMERICAN STATES INSURANCE COMPANY, ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, INC., LAW OFFICES OF MEACHUM, STARCK, BOYLE & TRAFMAN, and DAVID OLMSTEAD | ) ) ) ) ) ) ) ) | |
| Third-Party Defendants. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

Following the entry of an adverse judgment in a personal injury case, secondary insurance provider Landmark American Insurance Company ("Landmark") brought this action against Deerfield Construction, Inc., and its employee Shawn Graff (collectively, "Deerfield") seeking a declaratory judgment that Deerfield is not entitled to coverage under the Landmark

insurance policy. (R. 1, Compl.) Deerfield subsequently impleaded third-party defendants American States Insurance Company ("American States"), Arthur J. Gallagher Risk Management Services, Inc. ("AJG"), and Meachum, Starck, Boyle & Trafman and its attorney David Olmstead (collectively, "MSBT"), alleging that they breached various professional duties and were responsible for Landmark's potential denial of coverage. (R. 28, Third-Party Compl.) Presently before the Court are motions to dismiss or stay third-party claims by MSBT and AJG, (R. 61, MSBT's Mot. to Dismiss; R. 56, AJG's Mot. to Dismiss), as well as American States's joinder in the motions to stay, (R. 75, American States's Reply). For the reasons set forth below, MSBT's motion to dismiss is granted in part and denied in part, AJG's motion to dismiss is granted, and MSBT's and American States's motions to stay are denied.

## RELEVANT FACTS

Sometime prior to March 2007, Deerfield enlisted AJG as its insurance broker to procure on its behalf various insurance policies. (R. 28, Third-Party Compl. ¶ 7.) Through AJG, Deerfield obtained a primary commercial automobile liability policy from American States with liability limits of $1 million, effective from March 1, 2007, to March 1, 2008. (*Id.* ¶ 8.) AJG also obtained a commercial excess liability policy for Deerfield from Landmark, effective for the same period and with liability limits of $10 million. (*Id.* ¶ 9.)

On January 16, 2008, an automobile accident occurred involving Graff and a third party, Ryan Keeping ("Keeping"). (*Id.* ¶ 10.) Deerfield notified both American States and AJG of the accident soon thereafter. (*Id.* ¶ 11.) In late December 2009, Keeping filed suit against Deerfield and Graff in the Circuit Court of Cook County (the "Keeping Case"). (*Id.* ¶ 13.) Deerfield notified American States and AJG of the litigation, but neither Deerfield, American States, nor AJG notified Landmark at that time. (*Id.* ¶ 14.) American States accepted Deerfield's defense

and retained MSBT to represent Deerfield. (*Id.* ¶¶ 15-16.) At all times throughout the trial, American States and MSBT allegedly represented to Deerfield that they did not believe a verdict would be entered against Deerfield and that there was no danger that Deerfield could be exposed to liability in excess of the American States policy. (*Id.* ¶¶ 18-19.) When asked what would happen if a judgment was entered that exceeded the limits of the American States policy, Olmstead allegedly responded that Deerfield "did not need to worry because they were covered under the Landmark Policy for any amounts in excess of $1 million and up to $10 million." (*Id.* ¶ 20.)

In October 2010, MSBT took the deposition of Keeping and allegedly first learned that he was claiming damages for emotional distress and long-term unemployment in the Keeping Case. (*Id.* ¶ 23.) In April 2013, Keeping tendered a $1.25 million settlement demand that was rejected. (*Id.* ¶ 24.) On December 5, 2014, AJG notified Landmark's parent company of the Keeping Case via email. (*Id.* ¶ 25.) The trial was scheduled to begin approximately five weeks later. (*Id.*) After the case had proceeded to trial but before the jury returned its verdict, MSBT and Keeping's counsel attempted to negotiate a high-low offer that would have ensured that any judgment would not exceed American States's $1 million policy limit, but the parties were not able to agree. (*Id.* ¶¶ 26-27.) On January 16, 2015, the jury entered a verdict of $2,368,000 against Deerfield, which was later reduced to $2,339,827. (*Id.* ¶¶ 28-31.) After the verdict was entered, Landmark refused to indemnify Deerfield for the portion of the judgment exceeding American States's policy limit, arguing that it had not been provided timely notice as required in its insurance contract. (*Id.* ¶ 32.)

3

## PROCEDURAL HISTORY

In February 2015, Landmark filed this action against Deerfield seeking a declaratory judgment that Deerfield's failure to timely notify it of the Keeping Case entitled Landmark to withhold payment on the policy.[1] (R. 1, Compl.) Deerfield moved to stay in light of its pending remittitur motion in the Keeping Case, (R. 10, Deerfield's Mot. to Stay), which this Court granted, (R. 14, Min. Order). Deerfield filed its answer on June 10, 2015, (R. 20, Deerfield's Answer), and filed an amended answer adding three counterclaims on June 24, 2015, (R. 22, Deerfield's Am. Answer). Landmark filed its answer to the counterclaims on July 14, 2015. (R. 26.) Landmark moved for summary judgment in January 2016, (R. 87, Landmark's Mot. for Summ. J.), and Deerfield moved to defer consideration of the motion until completion of discovery, (R. 90, Deerfield's Mot. to Defer). The Court granted Deerfield's motion, and it entered and continued Landmark's motion for summary judgment generally. (R. 99, Min. Order.)

Deerfield also sought leave to file a third-party complaint against MSBT, AJG, and American States, (R. 24, Deerfield's Mot. for Leave), which this Court granted, (R. 27, Min. Order). The third-party complaint was filed on July 22, 2015. (R. 28, Third-Party Compl.) Deerfield's third-party complaint alleges six counts in total. Counts I and II allege negligence and bad faith refusal to settle against American States, Counts III and IV allege breach of fiduciary duty and negligence against AJG, and Counts V and VI allege professional negligence and breach of fiduciary duty against MSBT.

MSBT moves to dismiss the third-party claims against it under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or to stay the claims until resolution of the Landmark case. (R.

---

[1] Landmark's complaint also listed Keeping as an indispensable defendant. (R. 1, Compl. at 1.) Landmark moved to dismiss Keeping from this action with prejudice after he signed a stipulation agreeing to be bound by and subject to the declaratory judgment entered by this Court. (R. 64, Landmark's Rule 41(a) Mot. to Dismiss at ¶¶ 7-8.) The Court granted this motion on October 21, 2015. (R. 66, Order.)

4

61, MSBT's Mot. to Dismiss.) MSBT argues that this Court lacks supplemental jurisdiction over these state-law claims because the claims are not part of the same case or controversy as the Landmark case. (*Id.* at 2.) It also argues that Deerfield's malpractice count is premature because Deerfield will have suffered no injury unless it loses the Landmark claim and coverage is denied. (*Id.*) Deerfield responds that this Court has jurisdiction because the MSBT claims and the Landmark case "share identical factual issues." (R. 70, Deerfield's Resp. at 2.) Deerfield further argues that its claims are ripe for adjudication because an adverse judgment has already been entered against it in the Keeping Case. (*Id.*)

AJG also moves to dismiss the third-party claims against it under Federal Rule of Civil Procedure 12(b)(6), or alternatively to sever and stay these claims. (R. 56, AJG's Mot. to Dismiss.) AJG argues that Deerfield has failed to state a claim because "the only purported duty it alleges AJG breached—failing to report Deerfield's claim to its excess insurer—is not a cognizable duty under Illinois law." (*Id.* at 2.) AJG contends that the statute establishing the duties of insurance brokers in Illinois, the Illinois Insurance Placement Liability Act ("IIPLA"), 735 ILL. COMP. STAT. 5/2-2201, sets forth an exhaustive list of insurance brokers' duties, and that these claims do not fall under that list. (*Id.*) Deerfield responds that insurance brokers owe certain fiduciary duties under Illinois law that are not specifically delineated by the IIPLA and, because the IIPLA does not specifically limit liability in cases alleging a failure to notify insurers of potential claims, the statute does not preclude its claims against AJG. (R. 69, Deerfield's Resp. at 2-3.)

American States filed its answer to the third-party complaint on the same day that MSBT's and AJG's motions to dismiss were filed. (R. 62, American States's Answer.) Subsequently, American States joined in the motions to stay filed by MSBT and AJG. (R. 75,

American States's Reply.) American States argues that a stay is warranted because resolution of the Landmark case may moot the American States claims and the issues to be decided in each case are distinct. (*Id.* at 2.) Deerfield has not responded to American States's motion.

## LEGAL STANDARD

Rule 12(b)(1) provides for dismissal of a case when the Court lacks subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1). In deciding a motion to dismiss for lack of subject-matter jurisdiction, the Court "must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). The Court may also look beyond the pleadings to "view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (citation and internal quotation marks omitted). The party invoking jurisdiction bears the burden of establishing that jurisdiction exists. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Even when a party does not raise the issue, "not only may the federal courts police subject matter jurisdiction *sua sponte*, they must." *Wernsing v. Thompson*, 423 F.3d 732, 743 (7th Cir. 2005) (citation and internal quotation marks omitted).

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Kubiak v. City of Chi.*, 810 F.3d 476, 480-81 (7th Cir. 2016). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id.* But the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (citation omitted).

## ANALYSIS

### I. Subject-Matter Jurisdiction

In its motion to dismiss, MSBT argues that the Court lacks subject-matter jurisdiction because Deerfield's third-party claims are not part of the same case or controversy as Landmark's underlying claims against Deerfield. (R. 61, MSBT's Mot. to Dismiss at 1.) Deerfield responds that, because both the third-party claims and Landmark's revolve around the issues of notice and the adverse judgment in the Keeping Case, there is a sufficient factual connection between the claims to support supplemental jurisdiction. (R. 70, Deerfield's Resp. at 3-8.) Neither AJG nor Deerfield address the jurisdictional basis for Deerfield's third-party claims against AJG.

As MSBT notes, the third-party complaint does not explicitly set forth the jurisdictional basis for its claims. (R. 61, MSBT's Mot. to Dismiss at 4.) It does, however, allege that AJG and MSBT are entities with their principal place of business in Illinois, the same state as Deerfield's and Graff's citizenship. (R. 28, Third-Party Compl. ¶¶ 1-6.) Thus, because Deerfield's claims against MSBT and AJG are not based on federal law, and because there is no diversity between the parties, the only potential basis for jurisdiction is supplemental jurisdiction.[2]

Under 28 U.S.C. § 1367(a), the Court has "supplemental jurisdiction over all other claims that are so related to claims in the action within . . . [the court's] original jurisdiction that they

---

[2] Unlike MSBT and AJG, American States is diverse from Deerfield. In the third-party complaint, Deerfield, an Illinois corporation, alleged that American States is an Indiana corporation with its principal place of business in Indiana. (R. 28, Third-Party Compl. ¶ 3.) In its answer, American States responds that it in fact has its principal place of business in Massachusetts. (R. 62, American States's Answer ¶ 3.) In either case, the parties have diverse citizenship. Thus, as the amount in controversy exceeds $75,000, this Court has diversity jurisdiction over the American States claims. (R. 28, Third-Party Compl. ¶¶ 43, 49 (requesting damages "equal to any amount that Third-Party Plaintiffs must pay in the [Keeping Case]").)

7

form part of the same case or controversy." 28 U.S.C. § 1367(a). Most importantly, "[t]he state and federal claims must derive from a common nucleus of operative fact," *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966), although "[a] loose factual connection between the claims is generally sufficient," *Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir. 1995).

### A. MSBT

The Court finds that Deerfield's claims against MSBT share a common nucleus of operative fact with Landmark's underlying diversity suit against Deerfield, and thus this Court has jurisdiction over these claims. Although MSBT correctly observes that the Landmark case and MSBT claims involve different aspects of the Keeping Case, the fact remains that both seek to answer who should be held responsible for paying that adverse judgment.

MSBT argues that "the Underlying Claims address whether Deerfield and Graff may enforce the Landmark insurance contract *against Landmark*" while "the Third-Party Claims focus on [MSBT's] duties to Deerfield and Graff in defending the Keeping lawsuit." (R. 61, MSBT's Mot. to Dismiss at 5, 6.) However, the mere fact that the Landmark case and the MSBT claims pursue different legal claims is not itself enough to defeat supplemental jurisdiction. On the contrary, these claims all stem from the overall reasonableness and basic handling of the underlying Keeping Case and the subsequent adverse judgment that was entered against Deerfield. Should Landmark need to establish that it was prejudiced by the alleged failure to provide timely notice, as Deerfield claims it must, then the Landmark case would require detailed factfinding concerning the actions that were taken in the Keeping Case. Although the Landmark case and the MSBT claims focus on different aspects of the Keeping Case and its aftermath, the fact that they both originate from and rely significantly on whether the underlying

8

Keeping Case was reasonably handled demonstrates that they share at least the "loose factual connection" necessary to establish supplemental jurisdiction. *Ammerman*, 54 F.3d at 424.

Further, because this Court has diversity jurisdiction over the American States claims, these claims also constitute part of the federal case. 28 U.S.C. § 1332(a); *see also, e.g., Legacy Seating, Inc. v. Commercial Plastics Co.*, 65 F. Supp. 3d 542, 555 (N.D. Ill. 2014) (finding that "the Court possesses original jurisdiction over [plaintiff's] federal counterclaims" even in the absence of any other remaining federal claims). There can be no question that the American States claims and the MSBT claims arise from a common nucleus of operative fact. Both sets of claims allege that the third-party defendants improperly evaluated and refused to settle the Keeping Case, failed to notify Deerfield of a conflict of interest, and failed to properly mitigate and notify Landmark of the risk of an adverse judgment exceeding American States's policy limit. (*Compare* R. 28 ¶¶ 42, 48, *with id.* ¶¶ 60, 64.) The American States claims, which properly form part of the federal case under this Court's diversity jurisdiction, rely on identical operative facts as the MSBT claims. These third-party claims, alleging essentially the same facts against two parties, are closely related enough that a party would be expected to bring them in the same action. *Lynam v. Foot First Podiatry Ctrs., P.C.*, 919 F. Supp. 1141, 1148 (N.D. Ill. 1996). Accordingly, this Court has supplemental jurisdiction over the MSBT claims.

Even when supplemental jurisdiction exists, the Court may still relinquish it "for several reasons: the relation of the state claims to a novel or complex issue of State law; their predominance over the claim or claims over which the district court has original jurisdiction; or for other compelling reasons in exceptional circumstances." *Green Valley Invs. v. Winnebago Cty.*, 794 F.3d 864, 869-70 (7th Cir. 2015) (citation and internal quotation marks omitted). The Court finds no grounds for relinquishing supplemental jurisdiction in this case. The MSBT

9

claims involve well-trod issues of attorney malpractice; the Court declines to find that the question in the malpractice case—"What duties (if any) did [MSBT] owe Deerfield and Graff to advise them on insurance coverage issues; what was the standard of care; and was it met?"—raises any particularly novel or complex questions under Illinois malpractice law. (R. 61, MSBT's Mot. to Dismiss at 8.) Because the MSBT claims and the American States claims concern similar facts and theories of relief, the Court finds no danger that retaining the MSBT claims will overshadow those portions of the case invoking the Court's original jurisdiction. Finally, the Court finds that no gain to efficiency and judicial economy will be found by requiring a state court to handle claims intimately related to the American States claims that this Court will already be resolving. Because the MSBT claims share a common nucleus of operative fact with the claims falling under this Court's original jurisdiction, and because there are no compelling reasons encouraging this Court to decline jurisdiction, the Court will exercise supplemental jurisdiction over the MSBT claims.

**B.    AJG**

Although neither party raised the issue of jurisdiction as to the AJG claims, the Court must satisfy itself that it has jurisdiction. *Wernsing*, 423 F.3d at 743. For reasons similar to those establishing its jurisdiction over the MSBT claims, the Court finds that the AJG claims share a common nucleus of operative fact with related claims falling under this Court's original jurisdiction.

The sole issue in the AJG claims is whether AJG should have provided notice to Landmark earlier than it did. Although this issue relies on facts concerning the relationship between AJG and Deerfield, it also relies on facts concerning the Keeping Case. Specifically, the AJG claims require that Deerfield establish the underlying events in the Keeping Case, the nature

of its insurance coverage with American States and Landmark, the dates on which all parties received notice of the accident and the Keeping lawsuit, and the steps that were taken to notify Landmark. These same facts are necessary for resolution of the American States claims, which arise under this Court's diversity jurisdiction. Therefore, the AJG claims share at least the loose factual connection sufficient to establish supplemental jurisdiction. *Ammerman*, 54 F.3d at 424. Further, the parties set forth no reason that this Court should decline jurisdiction over the AJG claims, nor does this Court find any such reason.

**II.     Failure to State a Claim**

    **A.     MSBT**

In addition to its arguments that the MSBT claims should be dismissed under Rule 12(b)(1), MSBT presents two arguments that they should be dismissed under Rule 12(b)(6). First, MSBT argues that the breach of fiduciary claim should be dismissed because it is duplicative of the malpractice claim. (R. 61, MSBT's Mot. to Dismiss at 13.) Deerfield does not respond to MSBT's contention and thus waives its breach of fiduciary duty claim. *See Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1078 (7th Cir. 2016) ("[B]y failing to respond in any way to any of the arguments advanced by Defendants . . . , Plaintiffs have waived their claims."); *Green v. Charter One Bank, N.A.*, 640 F. Supp. 2d 998 (N.D. Ill. 2009) (dismissing count from complaint where the plaintiff did not address the defendant's argument in its opposition, reasoning that "failure to respond permits an inference of acquiescence and 'acquiescence operates as a waiver.' " (quoting *Wojtas v. Capital Guardian Tr., Co.*, 477 F.3d 924, 929 (7th Cir. 2007)).

Even if Deerfield had not waived this claim, under Illinois law, "when the same operative facts support actions for legal malpractice and breach of fiduciary [duty] resulting in the same

11

injury to the client, the actions are identical and the later should be dismissed as duplicative." *Nettleton v. Stogsdill*, 899 N.E.2d 1252, 1267 (Ill. App. Ct. 2008) (citation omitted). The allegations in the malpractice and breach of fiduciary counts are all but identical with no difference but the alleged duties that were breached. (R. 28, Third-Party Compl. ¶¶ 58-61, 62-65.) For these reasons, the Court grants MSBT's motion to dismiss the breach of fiduciary duty claim.

MSBT also argues that the malpractice claim should be dismissed as premature because Deerfield has not yet been injured. (R. 61, MSBT's Mot. to Dismiss at 10.) According to MSBT, "the claimed injury is that Deerfield and Graff *might* not be able to enforce the Landmark policy and so *might* have to pay part of the Keeping verdict." (*Id.*) In MSBT's view, this "will not be an actual injury unless and until, at the very least, there is a judgment of no coverage under the Landmark policy." (*Id.*) Deerfield responds that it has already suffered damages by having an adverse judgment entered against it in the Keeping Case. (R. 70, Deerfield's Resp. at 11-12.) MSBT replies that "[t]he Malpractice Claim is not about the Keeping Verdict—it is about whether [MSBT] caused through professional negligence the loss of excess insurance coverage for the Keeping Verdict." (R. 73, MSBT's Reply at 5.)

To state a claim for malpractice, Deerfield must plausibly allege an attorney-client relationship, breach of MSBT's duties, actual injury, and proximate cause tying the injury to the breach. *Huang v. Brenson*, 7 N.E.3d 729, 735 (Ill. App. Ct. 2014). Contrary to MSBT's claims, Deerfield sufficiently alleges that MSBT's malpractice caused *both* an unnecessarily high adverse judgment in the Keeping Case *and* the potential denial of coverage by Landmark. Among other acts, Deerfield alleges that MSBT committed malpractice when it failed to protect Deerfield from liability in excess of the American States policy limits, failed to advise Deerfield

12

of a potential conflict of interest with American States, which employed MSBT, and failed to advise Deerfield to retain its own counsel. (R. 28, Third-Party Compl. ¶ 60.) The Court can reasonably infer that these failures caused damages in the Keeping Case itself, such as by leading to otherwise unreasonable rejections of Keeping's settlement offer or failure to agree to a high-low settlement offer. Regardless, Deerfield alleges that MSBT's malpractice caused the adverse judgment in the Keeping Case, which has led to actual injury as Deerfield has been responsible for paying this sum regardless of the outcome of the Landmark case. The mere fact that Deerfield also seeks to have Landmark pay the judgment does not render the injury hypothetical; the injury has occurred, and it will remain until some other party *actually* pays the judgment. *In re Estate of Powell*, 12 N.E.3d 14, 20 (Ill. 2014) (describing actual damages in a malpractice case as "a monetary loss" and clarifying that "[d]amages are considered speculative only if their existence is uncertain, not if the amount is uncertain or yet to be fully determined"). Because Deerfield has sufficiently alleged that MSBT's malpractice caused actual injuries, the Court denies MSBT's motion to dismiss the malpractice claim.

**B. AJG**

AJG argues that Deerfield fails to state a claim for breach of fiduciary duty or for negligence the IIPLA does not impose any duty on brokers to report claims to insurers. (R. 56, AJG's Mot. to Dismiss at 6.) Deerfield agrees that the IIPLA does not cover the conduct it alleges against AJG, but argues that the IIPLA does not foreclose the existence of any other duties owed by insurance brokers. (R. 69, Deerfield's Resp. at 2-3.)

The IIPLA provides, in relevant part:

>(a) An insurance producer . . . shall exercise ordinary care and skill in renewing, procuring, binding, or placing the coverage requested by the insured or proposed insured.

13

> (b) No cause of action brought by any person or entity against any insurance producer . . . concerning the sale, placement, procurement, renewal, binding, cancellation of, or failure to procure any policy of insurance shall subject the insurance producer . . . to civil liability under standards governing the conduct of a fiduciary or a fiduciary relationship except when the conduct upon which the cause of action is based involves the wrongful retention or misappropriation by the insurance producer . . . of any money that was received as premiums, as a premium deposit, or as payment of a claim. . . .
>
> (d) While limiting the scope of liability of an insurance producer . . . under standards governing the conduct of a fiduciary or a fiduciary relationship, the provisions of this Section do not limit or release an insurance producer . . . from liability for negligence concerning the sale, placement, procurement, renewal, binding, cancellation of, or failure to procure any policy of insurance.

735 ILL. COMP. STAT. 5/2-2201. The IIPLA applies to insurance brokers as "insurance producers." *Skaperdas v. Country Cas. Ins. Co.*, 28 N.E.3d 747, 753 (Ill. 2015).

AJG argues that the IIPLA "limits any extra-contractual duties owed by AJG to those found within the statute." (R. 56, AJG's Mot. to Dismiss at 8.) Under this theory, insurance brokers are only liable for breach of fiduciary duty when they have wrongfully retained or misappropriated premiums, and they are only liable for negligence concerning the sale, placement, procurement, renewal, binding, cancellation of, or failure to procure a requested insurance policy. Because neither party proposes that the present claims fall into either of these categories, AJG argues, the IIPLA precludes any other extra-contractual duties. (*Id.*)

AJG cites numerous cases to argue that the IIPLA provides an exhaustive list of the duties owed by insurance brokers and that the statute precludes any other professional duty. However, upon closer examination, the cases AJG cites deal solely with situations that are directly answered by the statute: they concerned procuring or failing to procure policies and the statute thus set forth the conditions under which a broker would have fiduciary or other duties. *Melrose Park Sundries, Inc. v. Carlini*, 927 N.E.2d 132 (Ill. App. Ct. 2010); *Garrick v. Mesirow Fin. Holdings, Inc.*, 994 N.E.2d 986 (Ill. App. Ct. 2013); *Restoration Specialists, LLC v.*

14

*Hartford Fire Ins. Co.*, No. 08-CV-644, 2011 WL 332510 (N.D. Ill. Jan. 31, 2011). The supplemental authority AJG submitted, *Office Furnishings, Ltd. v. A.F. Crissie & Co.*, 44 N.E.3d 562 (Ill. App. Ct. 2015), similarly turns on the fact that the insurance broker fulfilled its duties by procuring the coverage that was specifically requested. *Id.* at 569. With regard to these four cases, there is a great difference between finding that a claim is precluded by a statute and finding that any claim not established by a statute is precluded by it.

The remaining cases cited by AJG do not address the IIPLA's scope. In *Skaperdas v. Country Casualty Insurance Co.*, the only issue was whether captive insurance agents fell under the statute's "insurance provider," not whether section 2201 applied to the conduct in question.[3] *Skaperdas*, 28 N.E.3d at 751. Although *Mizuho Corp. Bank (USA) v. Cory & Associates, Inc.*, 341 F.3d 644 (7th Cir. 2003), referred to an "automatic exemption from liability for breaches of fiduciary duty" under the IIPLA, it did not detail the scope of this exemption. *Id.* at 652. Further, the controversy in that case predated the effective date of the IIPLA and concerned a failure to procure sufficient insurance, so the question of extra-statutory duties did not arise. *Id.* at 651. In short, none of the cases cited by AJG support its claim that the IIPLA is the sole source of any duties owed by an insurance broker to its clients.

---

[3] AJG's discussions of *Skaperdas* are particularly unsupported by the case itself. For instance, AJG states on several occasions that the IIPLA "codifies the common law duty of an insurance provider" based on *Skaperdas*. (*See, e.g.*, R. 56, AJG's Mot. to Dismiss at 6.) The cited passage states only that the court "believe[s] section 2-2201(a) imposes a duty similar to the one previous recognized by our appellate court." *Skaperdas*, 28 N.E.3d at 756. In its reply, AJG again cites *Skaperdas* to establish that the IIPLA "limits any liability of an insurance broker to only those actions taken in the procurement of insurance policies." (R. 74, AJG's Reply at 3.) The cited passage provides no support for this assertion. AJG further argues that "*Skaperdas* agreed with *Carlini* in rejecting a reading of the statute that would impose duties other than those specifically set forth in the statute." (*Id.* at 5.) Instead, *Skaperdas* affirmed *Carlini*'s simple finding that, where the statute imposes duties on insurance providers relating to the coverage requested by their clients, these duties are not imposed when the coverage is not requested by clients. *Skaperdas*, 28 N.E.3d at 757.

15

On the other side of the coin, Deerfield has failed to establish that insurance brokers may have fiduciary duties in situations not mentioned by the IIPLA. The three cases it cites for this proposition do not support its conclusion. In *Selective Insurance Company of the Southeast v. Homeworks Central Inc.*, No. 4:12-cv-4017-SLD-JAG, 2013 WL 1286982 (C.D. Ill. Mar. 26, 2013), the court declined to hold that "the only situation in which a breach of fiduciary duty can be asserted against an insurance producer is in cases of wrongful retention or misappropriation." *Id.* at *4 n.3. The court stated that such a holding would read out the "concerning" language in section 2201(b). *Id.* However, this discussion was dicta, as the court had already held that the cause of action in that case *did* fall under section 2201(b) as it concerned the sale or placement of an insurance policy. *Id.* at *4. While the *Selective Insurance* court's interpretation of this aspect of Illinois insurance law is understandable, this Court finds this authority to be less than persuasive. Deerfield also cites *Spungen v. Forman*, No. 06 C 5974, 2007 WL 1114053 (N.D. Ill. Apr. 9, 2007), arguing that it denied a motion to dismiss by holding that the IIPLA did not apply "because the cause of action concerned the *resale* of an insurance policy, rather than" the sale of a policy. (R. 69, Deerfield's Resp. at 7.) This is an oversimplification of the court's determination. The court only stated that, after considering the IIPLA, it found "nothing precluding Plaintiffs['] action" without explaining its reasoning. *Spungen*, 2007 WL 1114053, at *4. Further, the defendants in *Spungen* were financial planners who may have developed a "special relationship" with the plaintiffs sufficient to create a fiduciary duty independent of their specific conduct in procuring insurance. *Id.* at *3. Finally, the *Spungen* court observed that the complaint alleged that the defendants had breached a fiduciary duty by misappropriating funds, which could open the door to liability even under section 2201(b). *Id.* at *4. Because the court did not explain the reasoning behind its conclusion, and because there were several potential

16

explanations for its holding, this Court declines to assume that it was limiting the reach of the IIPLA or that such an interpretation would be correct under Illinois state law.

Finally, Deerfield cites *Garrick* for the proposition that "Illinois courts have affirmed that insurance producers owe fiduciary duties to their insured beyond a minimal duty not to misappropriate or wrongfully retain funds." (R. 69, Deerfield's Resp. at 7.) Although the *Garrick* court does state that "[t]he relationship between an insured and his broker or producer, acting as the insured's agent, is a fiduciary one," *Garrick*, 994 N.E.2d at 990, the reliability of this assertion is questionable. The *Garrick* court relies solely on *AYH Holdings, Inc. v. Avreco, Inc.*, 826 N.E.2d 1111, 1125 (Ill. App. Ct. 2005), for this statement of Illinois law. However, *AYH Holdings* has little to offer regarding the understanding of post-IIPLA insurance law because "the insurance at issue [in *AYH Holdings*] was sold and procured *before* the January 1, 1997, effective date of section 2-2201(a)," *Country Mut. Ins. Co. v. Carr*, 852 N.E.2d 907, 912 (Ill. App. Ct. 2006), *vacated pursuant to settlement by In re Country Mut. Ins. Co.*, 889 N.E.2d 209 (Ill. 2007). Further, *Garrick*'s assertion of a fiduciary duty conflicts with its later statement that "an insurance broker owes no duty other than to act with ordinary care in renewing, procuring, binding or placing coverage of the requested type and for the requested time period." *Garrick*, 994 N.E.2d at 992. Although *Garrick* has suggested that insurance brokers could owe a fiduciary duty outside the terms established by section 2201, in light of its unsteady footing and the absence of further Illinois state court decisions on the exhaustiveness of section 2201's duties, the Court finds that it is unpersuasive authority for this proposition of state law.

Even if Deerfield were able to establish that section 2201 did not set forth the full array of duties owed by insurance brokers, it has not provided any authority suggesting that insurance brokers have a specific duty to provide notice of claims to insurers on behalf of the insured.

17

Neither has the Court been able to locate any Illinois cases to that effect. Establishing that the statute does not preclude such a duty does not suffice to create such a duty. Even if section 2201 is not exhaustive of the duties owed by insurance brokers, Deerfield still must be able to point to some legal authority establishing the duty that it claims was violated. *Iqbal*, 556 U.S. at 678.

Accordingly, even if Deerfield could establish that section 2201 does not preclude any other suits against insurance brokers for violations of professional duties, it has failed to state a claim against AJG. Deerfield has attempted to show, at most, that the IIPLA does not stand as an obstacle to the AJG claims; this does not suffice to establish a plausible claim against AJG. Thus, the Court grants AJG's motion to dismiss.

### III. Motions to Stay

In the alternative to its motion to dismiss, MSBT and American States argue that the third-party claims should be stayed until the Landmark case is resolved.[4] (R. 61, MSBT's Mot. to Dismiss at 15.) A court may stay proceedings in its discretion to manage its docket. *See, e.g., Tex. Indep. Producers & Royalty Owners Ass'n v. EPA*, 410 F.3d 964, 980 (7th Cir. 2004) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936))). When ruling on a motion to stay proceedings, other courts have considered "(1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (2) whether a stay will simplify the issues in question and streamline the trial, and (3) whether a stay will reduce the burden of litigation on the parties and on the court." *Oplus Techs., Ltd. v. Sears Holding Corp.*, No. 11-cv-9029, 2012 WL 2400478, at *2 (N.D. Ill. June 21, 2012) (citation omitted).

---

[4] AJG also moved for severance and stay of the claims against it. (R. 56, AJG's Mot. to Dismiss at 12-14.) However, as the Court has granted its motion to dismiss, it need not consider this issue.

18

MSBT argues that a stay will not prejudice Deerfield because it cannot prevail in the malpractice claims unless it loses the Landmark case, and that a stay would streamline the case and potentially avoid wasting of judicial resources because the malpractice claim becomes moot if Deerfield wins the Landmark case. (R. 61, MSBT's Mot. to Dismiss at 15.) Deerfield responds that the malpractice claim does not become moot if it prevails against Landmark; instead, "[t]he Landmark Case only affects *the amount* of the judgment that Deerfield may obtain against [MSBT], not their ability to obtain a judgment." (R. 70, Deerfield's Resp. at 13.) Deerfield further argues that forcing it to duplicate its discovery by staying the malpractice claim would be more wasteful than treating all the claims in one action. (*Id.*) American States has also requested, if the Court stays the other third-party claims, that the American States claims also be stayed "on the same bases." (R. 75, American States's Reply at 2.) Deerfield has not responded to American States's joinder in the motions for stay.

The Court declines to exercise its discretionary power to stay the third-party claims. Although they approach the issue from different angles, the Landmark case and the third-party claims all seek to answer the same ultimate question: who should be responsible for paying the adverse judgment in the Keeping Case? Despite the third-party defendants' arguments, the Court sees no gain to judicial efficiency in expanding this question into several distinct proceedings. While it is possible that treating these claims in one action may impose some costs on the third-party defendants, this is balanced by the increased costs imposed on Deerfield, the non-moving party, by splitting the case into pieces. Similarly, although it is possible that staying the third-party claims could streamline the issues in each proceeding, the Court weighs this against the possibility of duplicated effort and resolving what is fundamentally the same controversy in a piecemeal fashion. In the interest of fairness to the parties, and in the hope of more expeditiously

resolving the controversy in its entirety, the Court denies MSBT's and American States's motions to stay.

## CONCLUSION

For the foregoing reasons, AJG's motion to dismiss (R. 56) is GRANTED. MSBT's motion to dismiss (R. 61) is GRANTED IN PART AND DENIED IN PART. The motions to stay filed by MSBT (R. 61) and American States (R. 75) are DENIED. The parties shall appear for a status hearing on June 16, 2016, at 9:45 a.m. The parties are DIRECTED to reevaluate their settlement positions in light of this opinion and to exhaust all settlement possibilities prior to the status hearing.

ENTERED: _____
**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: May 19, 2016**