# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| LANDMARK AMERICAN INSURANCE COMPANY, | ) ) ) | No. 15 C 1785 |
| Plaintiff, | ) ) | |
| v. | ) ) | Chief Judge Rubén Castillo |
| DEERFIELD CONSTRUCTION, INC., et al., | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Following an adverse jury verdict in a personal injury lawsuit, a state court entered judgment against Deerfield Construction, Inc. ("Deerfield") and Shawn Graff, one of Deerfield's employees. (R. 192-1, Bunch Dep. Tr. at 133, 183-86.) Excess insurance provider Landmark American Insurance Company ("Landmark") brought this action against Deerfield and Graff seeking a declaratory judgment that Deerfield and Graff are not entitled to insurance coverage for the state court judgment under an excess insurance policy that Deerfield purchased from Landmark. (R. 1, Compl.) Deerfield then filed a third-party complaint against American States, Arthur J. Gallagher Risk Management Services, Inc. ("AJG"), the Law Offices of Meachum, Starck, Boyle & Trafman ("MSBT"), and David J. Olmstead, seeking to hold them responsible for the adverse judgment. (R. 28, Third-Party Compl.)

Presently before the Court are: Landmark's motion for summary judgment against Deerfield and Graff; Deerfield's motions for summary judgment against American States and Landmark; and MSBT's, Olmstead's, and American States' motions for summary judgment against Deerfield. (R. 191; R. 198; R. 200; R. 205; R. 208.) Also before the Court is Deerfield's

and Graff's motion to amend their third-party complaint. (R. 214, Mot. to Amend.) For the reasons stated below, Landmark's motion for summary judgment is granted, and the remaining claims are dismissed without prejudice for lack of jurisdiction. As a result, the Court denies all other pending motions as moot.

## RELEVANT FACTS

The following facts are undisputed unless otherwise stated. The plaintiff, Landmark, is an Oklahoma company with its principal place of business in Georgia. (R. 1-4, Landmark Policy at 7.) Deerfield is a construction company with approximately 55 employees that specializes in construction projects within the telecommunications industry. (R. 223, Deerfield Resp. to Landmark Facts ¶ 25.) It is an Illinois corporation with its principal place of business in Illinois, and it has significant experience in dealing with insurance claims. (R. 192-1, Bunch Dep. Tr. at 53-55; R. 20, Deerfield Answer ¶ 8.) Graff is a Deerfield employee who resides in Illinois. (R. 20, Deerfield Answer ¶ 9; R. 203-8, Graff Dep. Tr. at 5.)

American States is an Indiana corporation with its principal place of business in Massachusetts. (R. 62, Am. States Answer ¶ 3.) MSBT is the in-house legal department of Liberty Mutual Insurance Company, and its principal place of business is in Illinois.[1] (R. 203-7, Olmstead Dep. Tr. at 27; R. 106, MSBT Answer ¶ 5.) Olmstead is an Illinois attorney who has lived and worked in Illinois for over two decades. (R. 203-7, Olmstead Dep. Tr. at 9-28.) Working for MSBT at the time, Olmstead represented Deerfield and Graff in a personal injury lawsuit filed against them by Ryan Keeping related to injuries that Keeping suffered in an automobile accident. (*Id.* at 31-32, 45-46; R. 106, MSBT Answer ¶¶ 10, 13, 16, 23, 26, 35.)

---

[1] MSBT has failed to indicate Liberty Mutual Insurance Company's state of incorporation in its pleadings.

Laurus Strategies ("Laurus")—an insurance consultant who is not a party to this lawsuit—is Deerfield's insurance broker. (R. 225, Deerfield Resp. to MSBT Facts ¶ 10.) When Deerfield entered into construction contracts, Deerfield would work with Laurus to ensure that Deerfield satisfied any insurance coverage requirements for construction projects. (R. 223, Deerfield Resp. to Landmark Facts ¶¶ 33-35.)

AJG is another insurance broker that Laurus used to acquire insurance policies for Landmark. (R. 192-1, Bunch Dep. Tr. at 64-65.) In February 2007, Laurus could no longer manage Deerfield's commercial insurance needs, and Laurus introduced Deerfield representatives to AJG representatives at an in-person meeting so that AJG could procure commercial insurance for Deerfield. (*Id.* ¶¶ 29-30; R. 223-1, Hulett Dep. Tr. at 25-27.) Laurus, working with AJG, procured for Deerfield a commercial automobile insurance policy from American States and an excess insurance policy from Landmark. (R. 223, Deerfield Resp. to Landmark Facts ¶¶ 36-38.) The American States insurance policy was in effect from March 1, 2007, to March 1, 2008, and had coverage limits of $1 million. (R. 225, Deerfield Resp. to MSBT Facts ¶ 8.) The Landmark insurance policy was in effect from March 1, 2007, to March 1, 2008, and had coverage limits of $10 million. (*Id.* ¶ 9.) The Landmark policy, however, only covered liability in excess of the American States policy's $1 million coverage limit. (R. 223, Deerfield Resp. to Landmark Facts ¶¶ 3-4.) Both the American States and Landmark insurance policies required Deerfield to give "prompt" notice to the insurer of any "accident," "suit," "claim," or "loss," and to "immediately" send the insurer copies of any documents concerning a claim or lawsuit. (R. 225, Deerfield Resp. to MSBT Facts ¶¶ 12-15.)

Deerfield paid its initial premium payment for the Landmark policy to AJG, but thereafter paid the remainder of the Landmark policy through a finance company. (R. 192-1,

Bunch Dep. Tr. at 70-71, 247-48; R. 223, Deerfield Resp. to Landmark Facts ¶ 40.) Although Deerfield had been introduced to AJG, it was Laurus that worked with AJG to acquire the Landmark policy for Deerfield, and Deerfield had no direct communication with AJG. (R. 192-1, Bunch Dep. Tr. at 66.) Tom Sauriol was the Deerfield employee responsible for handling its insurance claims and he sent everything relating to insurance claims to Laurus; he did "not know anything about AJG." (R. 223, Deerfield Resp. to Landmark Facts ¶¶ 46-47.) Christopher Bunch,[2] Sauriol's superior, believed that AJG was the "conduit" to Landmark, but Bunch relied on Laurus—not AJG—to communicate with Landmark. (R. 192-1, Bunch Dep. Tr. at 65-66, 69, 102.) His belief that AJG was the "conduit" for communication to Landmark was based on "discussions with Andy Hulett from Laurus Strategies," however, Bunch "never knew or understood the specifics as to why" this was the case. (*Id.* at 69.)[3] When Deerfield requested endorsements to the Landmark policy or requested that the coverage limits on the policy be increased, Deerfield would send these requests to Laurus who would then relay that information to AJG, who in turn communicated with Landmark. (*Id.* at 248-49.) Whenever Deerfield received any communications about the Landmark policy, Deerfield received it from Laurus through AJG. (*Id.* at 75-76.) During the 2007-2008 period the Landmark policy was in effect, Deerfield sought to increase its coverage limits under the Landmark policy from $5 million to

---

[2] Bunch testified as Deerfield's corporate representative pursuant to Federal Rule of Civil Procedure 30(b)(6). (R. 192-1, Bunch Dep. Tr. at 7-8.)

[3] Bunch's understanding of AJG came entirely from Laurus—when asked on what information he based his belief that AJG was the "conduit" for communication to Landmark, Bunch stated "[b]ecause *of my knowledge from [Laurus]* that . . . going through them was required in order to secure the policy, the fact that we had to actually pay [AJG] direct to secure the policy and that [AJG] was listed on the monthly statements. I believe they were listed on the monthly statements that we would receive from the finance company, and then . . . when we would have an endorsement to the policy, it would come from [AJG] *to Laurus and then to us.*" (*Id.* at 75-76 (emphasis added).)

$10 million. (*Id.* at 80.) All of the documentation needed to increase the limits, however, "went through Laurus" and the payment for the increase in coverage "went through [AJG]." (*Id.*)

On January 16, 2008, Graff was involved in a car accident with Keeping, a truck driver. (R. 225, Deerfield Resp. to MSBT Facts ¶ 16; R. 203, Deerfield Facts ¶ 3.) Soon after the accident, Deerfield, through Laurus, notified American States and AJG of the accident. (R. 223, Deerfield Add'l Facts ¶ 8;[4] R. 192-1, Bunch Dep. Tr. at 163, 173.) Deerfield believed that "notice to AJG constituted notice to Landmark," but Landmark never actually received notice of the Keeping accident at this time. (R. 225, Deerfield Resp. to MSBT Facts ¶ 24; R. 223, Deerfield Add'l Facts ¶¶ 13-14, 21.) Deerfield believed at this time that it only needed to notify Laurus because Laurus was "Deerfield's primary contact with the insurance companies, and any information provided to them would then be . . . forwarded to the next party." (R. 192-1, Bunch Dep. Tr. at 85, 89.) This was "the same procedure [Deerfield] followed on every other claim." (*Id.* at 87.) Deerfield was not certain that AJG received notice of the Keeping accident, just that "Laurus would have submitted notice or whatever [AJG] required." (*Id.* at 91.) Deerfield was not aware of any notice that Laurus provided to AJG, and instead submitted information regarding insurance claims to Laurus, allowing Laurus to "run with it." (*Id.*) Nor could Deerfield employees recall directly speaking to anyone from AJG in 2008. (*Id.* at 91-92.) Instead, any communication from AJG was only received by Laurus, who would then relay that communication to Deerfield. (*Id.* at 92.)

---

[4] Landmark did not respond to this factual assertion in Deerfield's statement of additional facts, (*see* R. 241, Landmark Resp. to Add'l Facts at 17), and therefore this fact is deemed to be undisputed for purposes of the parties' motions for summary judgment. N.D. ILL. L.R. 56.1 (providing that "material facts set forth in the statement . . . will be deemed admitted unless controverted by the statement of the moving party"); *see also Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011) ("[W]e have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings.").

Keeping then filed a lawsuit against Deerfield and Graff in the Circuit Court of Cook County, Illinois, on December 22, 2009, and served Deerfield and Graff soon thereafter. (R. 223, Deerfield Resp. to Landmark Facts ¶¶ 9-10.) As soon as Deerfield was served, it notified Laurus of the lawsuit. (R. 225, Deerfield Resp. to MSBT Facts ¶ 23.) Deerfield believed that Laurus would then notify Deerfield's insurers of the lawsuit. (*Id.* ¶¶ 24-25.) Sometime between December 30, 2009, and January 19, 2010, Deerfield and Graff notified American States of the Keeping lawsuit. (R. 223, Deerfield Resp. to Landmark Facts ¶ 11.) During the pendency of the Keeping lawsuit, Deerfield still used Laurus as its primary source of information regarding the Landmark excess policy, reaching out to Laurus to obtain information about the Landmark insurance policy that it needed in order to respond to interrogatories. (R. 192-1, Bunch Dep. Tr. at 178.)

Deerfield does not point to any evidence showing that it was aware that AJG was notified of the Keeping lawsuit after it was served on Deerfield. (*Id.* at 97, 99.) Deerfield, however, believed that notice of the lawsuit was given to Landmark "by virtue of the notice given to Laurus[.]" (*Id.* at 143.) Deerfield's "only indication" that Landmark received notice of the Keeping lawsuit was from an email Laurus sent to Deerfield in January 2015 "saying that notice was delivered to [AJG] who was the broker for Landmark."[5] (*Id.* at 212-14.)

Olmstead was appointed to represent Deerfield and Graff in the Keeping lawsuit by American States and Liberty Mutual Insurance Company. (R. 106, MSBT Answer ¶¶ 10, 13, 16, 23, 26, 35; R. 192-2, Sauriol Dep. Tr. at 90-92.) The parties dispute whether Olmstead believed

---

[5] This was partly due to the fact that Deerfield had no direct contact with AJG or Landmark related to the Keeping insurance claim. (*See also* R. 192-1, Bunch Dep. Tr. at 213-14 ("Q. To Deerfield's understanding, no one has had direct contact with [AJG] or Landmark American with respect to this claim? A. That is my understanding."), 247 ("I have no recollection of dealing with anyone at [AJG] directly."); R. 192-2 Sauriol Dep. Tr. at 55 ("Q. And I'm correct, am I not, that you did not personally ever give notice to [AJG]? A. Correct.").)

that the jury might award Keeping an amount exceeding the limits on the American States insurance policy. (R. 246, Am. States Resp. to Deerfield Facts ¶ 8.) Keeping's counsel asked the jury to return a verdict of $2.6 million against Deerfield, (*id.* ¶ 25), but the parties dispute whether the evidence presented at the Keeping trial was likely to persuade the jury to award Keeping an amount in excess of the American States policy's limits of $1 million. (*Id.* ¶¶ 22-24, 27-28.) Keeping offered Deerfield and Graff a "high-low" settlement that would have guaranteed a verdict within the coverage limits of the American States policy, but would have also guaranteed a significant recovery for Keeping. (R. 227-1, Madigan Dep. Tr. at 61-66.) Deerfield's counsel, however, rejected the settlement offer. (*Id.*)

On December 5, 2014, while the Keeping suit was pending, AJG directly notified Landmark of the Keeping lawsuit. (R. 223, Deerfield Resp. to Landmark Facts ¶ 21; R. 225, Deerfield Resp. to MSBT Facts ¶ 43.) On December 12, 2014, Kevin O'Connor, Landmark's Vice President of claims, sent an email to AJG acknowledging receipt of the insurance claim related to the Keeping lawsuit. (R. 231, Landmark Resp. to Deerfield Facts ¶ 28.)

More than a month later, on January 16, 2015, the jury entered a verdict against Deerfield and Graff in the amount of $2,368,000, which the trial court later reduced to $2,339,827. (*Compare* R. 203, Deerfield Facts ¶ 5, *with* R. 235, Am. States Resp. at 1.) The parties dispute whether this outcome was the result of MSBT's poor legal representation, or whether MSBT made informed, good-faith tactical decisions that nonetheless resulted in an adverse judgment in excess of the American States policy's coverage limits, (R. 225, Deerfield Resp. to MSBT Facts ¶¶ 38, 40-41; R. 225, Deerfield Add'l Facts ¶¶ 1-7.)

On January 29, 2015, approximately two weeks after the verdict in the Keeping lawsuit, Landmark sent Deerfield a letter stating that it reserved its rights to deny coverage under the

excess policy. (R. 225, Deerfield Resp. to MSBT Facts ¶ 55.) When Deerfield received the letter, it forwarded the letter to Laurus and asked Laurus why Landmark was not providing insurance coverage since Deerfield believed that Laurus had timely notified Landmark through AJG. (R. 192-1, Bunch Dep. Tr. at 162-63, 166.) Deerfield's understanding throughout the Keeping lawsuit was that "Laurus would speak with [AJG] who, in turn, would notify everyone[.]" (*Id.* at 173.) Deerfield communicated with no other party except for Laurus about Landmark's reservation of rights letter. (*Id.* at 175-76.)

## PROCEDURAL HISTORY

On February 27, 2015, Landmark filed this action seeking a declaratory judgment that it is not required to indemnify Deerfield under the Landmark policy due to Deerfield's failure to provide timely notice of the Keeping accident and lawsuit. (R. 1, Compl.) On June 24, 2015, Deerfield and Graff filed counterclaims against Landmark for declaratory judgment and breach of contract seeking coverage under the Landmark policy and damages for Landmark's failure to indemnify Deerfield. (R. 22, Am. Answer & Countercls.)

On July 22, 2015, Deerfield and Graff filed a third-party complaint against American States, AJG, MSBT, and Olmstead, seeking to hold those parties responsible for the excess verdict[6] in the Keeping lawsuit. (R. 28, Third-Party Compl.) The third-party complaint alleges that American States is liable to Deerfield for negligence and for acting in bad faith by failing to settle the Keeping lawsuit. (*Id.* ¶¶ 39-49.) As to AJG, the third-party complaint alleges that AJG was negligent and breached a fiduciary duty by failing to timely notify Landmark of the Keeping accident and lawsuit. (*Id.* ¶¶ 50-57.) Finally, as to Olmstead and MSBT, the third-party

---

[6] Any reference to an "excess verdict" herein refers to a verdict exceeding the American States policy's $1 million coverage limit.

complaint alleges that they are liable to Deerfield for legal malpractice, and that they breached alleged fiduciary duties owed to Deerfield. (*Id.* ¶¶ 58-65.)

On May 19, 2016, the Court dismissed all of Deerfield's third-party claims against AJG as well as Deerfield's claim for breach of fiduciary duty against MSBT and Olmstead. *Landmark Am. Ins. Co. v. Deerfield Constr., Inc.*, No. 15 C 1785, 2016 WL 2977274, at *5-8 (N.D. Ill. May 19, 2016) [hereinafter *Landmark I*]. In the same order, the Court also ruled that it had subject-matter jurisdiction over the claims in Deerfield's third-party complaint. *Id.* at *3-5.

On January 12, 2017, the Court denied Landmark's first motion for summary judgment, which argued that Deerfield failed to provide prompt notice as required under the Landmark policy, thereby relieving Landmark of any duty to provide coverage under the policy. *Landmark Am. Ins. Co. v. Deerfield Constr., Inc.*, No. 15 C 1785, 2017 WL 157858, at *5-12 (N.D. Ill. Jan. 12, 2017) [hereinafter *Landmark II*]. The Court reasoned that there was a genuine factual dispute as to whether AJG was Landmark's apparent agent for accepting notice of claims or lawsuits because Landmark failed to show how it handled its day-to-day interactions with Deerfield. *Id.* at *11-12. The parties also submitted evidence showing that Landmark had a history of communicating with Deerfield through AJG, which was another consideration that resulted in the Court's denial of Landmark's first motion for summary judgment. *Id.*

On November 10, 2017, Landmark filed another motion for summary judgment. (R. 191, Landmark Mot. for Summ. J. [hereinafter "MSJ"].) Three days later, Deerfield and Graff moved for summary judgment on their third-party claims against American States and their counterclaims against Landmark. (R. 198, Deerfield MSJ Am. States; R. 208, Deerfield MSJ Landmark.) On the same day, American States, Olmstead, and MSBT moved for summary

judgment against Deerfield on its third-party claims. (R. 200, MSBT MSJ; R. 205, Am. States MSJ.)

In its present motion, Landmark argues that it is entitled to summary judgment because there is no dispute that Deerfield failed to comply with the Landmark policy's notice provisions. (R. 191, Landmark MSJ at 4-5.) Landmark also argues—as it did in its first motion for summary judgment—that AJG lacked apparent authority to accept notice of claims on Landmark's behalf, because discovery conducted since the Court's denial of Landmark's first motion for summary judgment compels a different outcome. (*Id.* at 5-6.)

Conversely, Deerfield submits that the Court should grant summary judgment in its favor because AJG was Landmark's agent and received prompt notice of Deerfield's insurance claim. (R. 208, Deerfield MSJ Landmark at 3, 12.) Deerfield also argues that Landmark is estopped from denying coverage because Landmark remained silent about its coverage position when it finally learned of Deerfield's insurance claim. (*Id.* at 4.) In the alternative, Deerfield contends that even if AJG was not Landmark's agent, the notice given to Landmark of the Keeping lawsuit was timely and reasonable. (*Id.* at 3.)

American States' motion for summary judgment asserts that it cannot be held liable for failing to settle the Keeping lawsuit because it lacked any duty to settle. (R. 205, Am. States MSJ at 3-10.) American States also argues that it had no duty to report the Keeping lawsuit or accident to Landmark. (*Id.* at 10-15.) Deerfield, on the other hand, argues that it is entitled to judgment as a matter of law against American States because American States acted negligently and in bad faith by failing to accept a settlement offer from Keeping that would have protected Deerfield from an excess verdict. (R. 198, Deerfield MSJ Am. States at 3-5.)

MSBT and Olmstead also request summary judgment on Deerfield's third-party claims, arguing that Deerfield fails to put forth any evidence that they proximately caused any injury to Deerfield or that they owed any duty to advise Deerfield about coverage under the Landmark policy. (R. 200, MSBT MSJ at 1-2.) MSBT and Olmstead also argue that the doctrine of "judgmental immunity" applies in this case, which would insulate them from liability for any informed, good-faith tactical decisions they made during the Keeping lawsuit. (*Id.*)

Also before the Court is Deerfield's and Graff's motion for leave to amend their third-party complaint to add a request for punitive damages against American States. (R. 214, Mot. to Amend.) All of the pending motions for summary judgment and the pending motion to amend are opposed. (R. 220, 222-27, 229-36.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted). "A genuine dispute as to any material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Kvapil v. Chippewa Cty.*, 752 F.3d 708, 712 (7th Cir. 2014) (citation and internal quotation marks omitted). In deciding whether a dispute exists, the Court must "construe all facts and reasonable inferences in favor of the non-moving party." *Citizens for Appropriate Rural Roads v. Foxx*, 815

F.3d 1068, 1074 (7th Cir. 2016), *cert. denied sub nom.*, *Citizens for Appropriate Rural Roads, Inc. v. Foxx*, 137 S. Ct. 310 (2016).

Under Rule 56, the movant has the initial burden of establishing that a trial is not necessary. *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). "That burden may be discharged by showing . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* (citation and internal quotation marks omitted). If the movant carries this burden, the nonmovant "must make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* (citation and internal quotation marks omitted). The nonmovant "must go beyond the pleadings (*e.g.,* produce affidavits, depositions, answers to interrogatories, or admissions on file) to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in [their] favor." *Id.* (alteration in original) (citation and internal quotation marks omitted). "The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement." *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). "Conclusory statements, not grounded in specific facts" also cannot defeat a motion for summary judgment. *Bordelon v. Bd. of Educ. of the City of Chi.*, 811 F.3d 984, 989 (7th Cir. 2016) (citation and internal alteration omitted). In addition, not all factual disputes will preclude the entry of summary judgment, only those that "could affect the outcome of the suit under governing law." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (citation omitted).

In deciding the motions, the Court cannot weigh conflicting evidence, assess the credibility of the witnesses, or determine the ultimate truth of the matter, as these are functions of the jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704-05 (7th Cir. 2011). Instead, the Court's sole function

is "to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting *Anderson*, 477 U.S. at 249).

## ANALYSIS

**I.      Landmark's Motion for Summary Judgment**

Landmark argues that the Court should grant summary judgment in its favor because there is no dispute that Deerfield failed to give Landmark prompt notice of its insurance claim as required under the Landmark policy. (R. 191, Landmark MSJ at 4-5.) Deerfield, on the other hand, argues that Landmark's agent for receiving notice of insurance claims, AJG, was notified promptly after the Keeping accident occurred. (R. 222, Resp. at 2-6.) Deerfield also contends its notice to Landmark was reasonable even if the Court finds that AJG is not Landmark's agent. (R. 222, Resp. at 6-13.) Lastly, Deerfield argues that Landmark is estopped from denying coverage because it participated in settlement discussions and in the defense of the Keeping lawsuit. (R. 222, Resp. at 13-15.) The Court first addresses whether AJG was Landmark's apparent agent for purposes of receiving notice, and then addresses whether Landmark received reasonable notice of Deerfield's insurance claim and whether Landmark is estopped from denying coverage.

**A.      Agency**

The Court has previously decided that AJG was not Landmark's actual agent. *See Landmark II*, 2017 WL 157858, at *12 ("[T]he Court finds that AJG was not Landmark's actual agent."). Deerfield argues, however, that AJG was authorized to receive notice on Landmark's behalf through the Illinois doctrine of apparent agency. (R. 222, Resp. at 2-6.)

Landmark's motion for summary judgment renews many arguments from its prior motion for summary judgment that the Court denied on January 12, 2017. (*Compare* R. 149, Mem. Op. at 22-24, *with* R. 193, Mem. at 5-10.) Because Landmark has failed to present a compelling

reason for the Court to revisit its decision, the Court will only decide those issues that it did not already decide in Landmark's prior motion for summary judgment. *See Minch v. City of Chicago*, 486 F.3d 294, 301 (7th Cir. 2007) ("[A] court ought not to re-visit an earlier ruling in a case absent a compelling reason, such as manifest error or a change in the law, that warrants re-examination."); *Nucap Indus., Inc. v. Robert Bosch LLC*, 273 F. Supp. 3d 986, 1001-02 (N.D. Ill. 2017) ("[C]ourts generally avoid revisiting issues they have decided in the absence of extraordinary circumstances[.]" (citation and internal quotation marks omitted)). The Court previously decided that a reasonable jury could find that Landmark dressed AJG with apparent authority due to Landmark's history of communicating with Deerfield through AJG. *Landmark II*, 2017 WL 157858, at *12.

The Court, however, pointed out many issues it could not resolve on summary judgment due to an insufficient record. As relevant here, the Court observed that whether the doctrine of apparent agency applies in this case depends on how Landmark used AJG to communicate with Deerfield—"[i]f AJG merely performed traditional broker services, such as procuring and initially negotiating the policy, then . . . Landmark did not vest AJG with apparent authority for purposes of receiving notice." *Id.* at *11. The Court also noted that this case was unlike other cases where there was no apparent agency because Landmark failed to present evidence that "Deerfield or any of its employees had any particular sophistication with insurance matters." *Id.* at *10. Another gap in the record that precluded summary judgment was a lack of evidence as to "how Landmark customarily communicated with Deerfield on a routine basis, such as delivery of billing statements and collection of premiums," and how "Landmark handled its more day-to-day interactions with Deerfield." *Id.* at *11-12. Ultimately, the Court denied summary judgment and reasoned that this case was potentially analogous to *State Security Insurance Co. v. Burgos*, 583

N.E.2d 547, 551-54 (Ill. 1991), where the Illinois Supreme Court ruled that an insured's broker was the insurer's apparent agent for receiving notice of claims. *Id.* at \*10-12.

Landmark argues that evidence uncovered since the Court's decision distinguishes this case from *Burgos* and fills the evidentiary gaps that previously precluded summary judgment. (R. 193, Mem. at 1, 3-5, 7-9.) Specifically, Landmark points to: a deposition of Deerfield's corporate representative; evidence showing limited interactions between Landmark and Deerfield; evidence showing that Deerfield's understanding of AJG's authority came entirely from Laurus; and evidence regarding AJG's interactions with Deerfield. (*Id.* at 3-5, 6-10.) The Court looks at this evidence to determine whether Deerfield can proceed to trial on its theory that AJG was Landmark's apparent agent.

Under Illinois law, "[a]pparent authority is that authority which a reasonably prudent person would naturally suppose the agent to possess, given the words or conduct of the principal." *First Chi. Ins. Co. v. Molda*, 36 N.E.3d 400, 415-16 (Ill. App. Ct. 2015). "Where an insurer's manner of dealing with the broker in regard to the insured would lead the insured to believe that the broker had the authority to perform the acts in question, the insurer is estopped to deny the broker's authority to perform those acts." *State Sec. Ins. Co. v. Burgos*, 583 N.E.2d 547, 551 (Ill. 1991). "To establish apparent agency, a plaintiff must prove that (1) the principal or its agent acted in a manner that would lead a reasonable person to conclude that the individual who was alleged to be negligent was an employee or agent of the principal; (2) the principal had knowledge of and acquiesced in the acts of the agent; and (3) the plaintiff acted in reliance upon the conduct of the principal or its agent, consistent with ordinary care and prudence." *Wilson v. Edward Hosp.*, 981 N.E.2d 971, 978 (Ill. 2012). "Specifically, the principal must do something to lead the third party to believe that the agent is authorized to act on its behalf." *Bethany*

*Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 859-60 (7th Cir. 2001). "If there is no showing of reasonable and detrimental reliance upon the agent's authority, there can be no apparent authority." *Cove Mgmt. v. AFLAC, Inc.*, 986 N.E.2d 1206, 1213 (Ill. App. Ct. 2013).

The Court finds that summary judgment is proper on Deerfield's claim of apparent authority because Deerfield fails to present any evidence creating a triable issue on the third element of apparent agency. There is no evidence that Deerfield acted in reliance upon the conduct of *Landmark* or *AJG* as opposed to *Laurus*, and the record is absent of any evidence showing that Deerfield's blind reliance on Laurus was consistent with "ordinary care and prudence." *Wilson*, 981 N.E.2d at 978.

*Cove Management v. AFLAC, Inc.*, 986 N.E.2d 1206 (Ill. App. Ct. 2013), is instructive. In *Cove*, the court ruled that the plaintiff could not survive summary judgment on its claim of apparent agency because there was no evidence that the plaintiff made any effort to determine whether the putative agent was an independent contractor or agent of an insurance company. *Cove Mgmt.*, 986 N.E.2d at 1214. Instead, the plaintiff relied "exclusively on the statements and representations" of the putative agent for its understanding that such person had authority to bind the insurance company. *Id.* The court in *Cove*, therefore, rejected the plaintiff's apparent authority argument because there was "no showing of *reasonable* and detrimental reliance" upon conduct by the principal. *Id.* (emphasis added).

Deerfield, like the plaintiff in *Cove*, points to no evidence showing that it made any effort whatsoever to determine whether AJG was Landmark's agent. Deerfield's belief that AJG was the "conduit" for communication to Landmark was based entirely on "discussions with Andy Hulett from Laurus Strategies"—not from any of Landmark's or AJG's actions—and Deerfield's Rule 30(b)(6) witness "never knew or understood the specifics as to why" this was the case.

(R. 192-1, Bunch Dep. Tr. at 69.) The record is clear that after the accident involving Keeping, Deerfield believed that it only needed to notify Laurus of the accident because "they were Deerfield's primary contact with the insurance companies, and any information provided to them would then be . . . forwarded to the next party." (*Id.* at 85, 89.) Deerfield was not aware of any notice of the accident that Laurus sent to AJG, and instead passed along information about the Keeping accident to Laurus, assuming Laurus would "run with it." (*Id.* at 91) Likewise, when Deerfield was served with the Keeping lawsuit in 2010, it sent the complaint to Laurus—not AJG—assuming Laurus would notify all of Deerfield's insurers. (*Id.* at 96-97.) Deerfield's "only indication" that Landmark actually received notice of the Keeping lawsuit was from an email Laurus sent to Deerfield in January 2015 "saying that notice was delivered to [AJG] who was the broker for Landmark." (*Id.* at 212-14.) At bottom, Deerfield made no effort to ascertain whether AJG was authorized to receive notice on Landmark's behalf and blindly relied on Laurus to provide notice to Landmark. Summary judgment, therefore, is proper on Deerfield's claim of apparent agency because Deerfield puts forth no evidence that it "acted in reliance upon the conduct of the principal or its agent, consistent with ordinary care and prudence." *Wilson*, 981 N.E.2d at 978; *see also Gambino v. Boulevard Mortg. Corp.*, 922 N.E.2d 380, 413 (Ill. App. Ct. 2009) (noting that apparent authority arises when a party, "based upon his knowledge of the facts, possessed a *good-faith belief* that the agent possessed such authority" (emphasis added)).

The additional evidence provided by Landmark reveals that this case is inapposite to *Burgos*. In *Burgos*, the court found that the insured clearly and reasonably believed that the broker it notified was the insurance company's agent for receiving notice of insurance claims. *Burgos*, 583 N.E.2d at 554. The court in *Burgos* also took into account the insured's "lack of sophistication" with insurance matters, "which contributed to the reasonableness of [the

insured's] belief that [his insurance broker] was [the insurance company's] agent for notice purposes." *Id.* at 437-38. In sharp contrast to *Burgos*, there is no evidence that anyone at Deerfield harbored an independent belief that AJG was Landmark's agent for receiving notice; rather, Deerfield believed that it only needed to notify *Laurus* of any insurance claim, and that Laurus in turn would satisfy any notice requirements under its insurance policies. (R. 192-1, Bunch Dep. Tr. at 85, 89, 91, 96-97.) Additionally, Deerfield is a company of more than 50 employees that is experienced in insurance matters, unlike the individual plaintiff in *Burgos*. (R. 223, Deerfield Resp. to Landmark Facts ¶ 25; R. 191-2, Bunch Dep. Tr. at 53-55.) The record before the Court, therefore, fails to create any triable issue related to apparent agency because unlike *Burgos*, there is no evidence showing that it was reasonable for Deerfield to believe that AJG was Landmark's agent, nor is there any evidence showing that Deerfield actually harbored a belief that AJG had authority to receive notice on behalf of Landmark.

The other cases that Deerfield relies on are unpersuasive. (*See* R. 222, Resp. at 4.) Turning first to *First Chicago Insurance Co. v. Molda*, 36 N.E.3d 400 (Ill. App. Ct. 2015), that case is not analogous because the insured repeatedly contacted the insurer's apparent agent to provide notice of insurance claims. *See Molda*, 36 N.E.3d at 417-18 (refusing to overturn a finding in a bench trial that insured's broker was the insurer's apparent agent in part because the insured's "course of dealings with [its broker] and [the insurer] involved contacting [its broker], not [the insurer], whenever there was a potential insurance claim"). Unlike the insured in *Molda*, Deerfield never relied on or maintained regular contact with AJG—the alleged apparent agent in this case—for providing notice of insurance claims. Instead, Deerfield relied on and maintained regular contact with Laurus. (R. 192-1, Bunch Dep. Tr. at 85, 89, 91, 96-97.)

The next case Deerfield relies on, *Empire Fire & Marine Insurance Co. v. Faith Truck Lines, Inc.*, 533 N.E.2d 441, (Ill. App. Ct. 1988), is unpersuasive for the same reason—the apparent agent in that case was the insured's broker who the insured relied on repeatedly to provide notice of insurance claims. *Empire Fire*, 533 N.E.2d at 443. In this case, Laurus filled that role, not AJG. Additionally, in *Empire Fire*, the insured believed that reporting claims to its broker was proper. Unlike *Empire Fire*, there is no evidence that Deerfield actually harbored an independent belief that it was proper to report claims to AJG. Rather, Deerfield's 30(b)(6) witness acknowledged that it did not understand why Laurus communicated with AJG with respect to the Landmark policy. (R. 192-1, Bunch Dep. Tr. at 69.)

Deerfield cites to record evidence showing that Laurus relied on AJG to communicate with Landmark and manage the Landmark policy, (R. 223, Deerfield Add'l Facts ¶¶ 1-8), but the relevant question is not whether *Laurus* acted in reliance on AJG's conduct. It is instead whether *Deerfield* acted in reliance on Landmark's or Landmark's agents' conduct, "consistent with ordinary care and prudence." *Wilson*, 981 N.E.2d at 978. Deerfield also argues that the existence of an unknown intermediary that ultimately provides notice to the insured "is irrelevant because the focus is on the perceptions of the insured." (R. 222, Resp. at 6.) Even accepting this argument as valid, Deerfield points to no evidence that it—as opposed to Laurus—ever perceived that AJG was authorized to receive notice of claims on Landmark's behalf. (*See* R. 192-1, Bunch Dep. Tr. at 69.) The Court, therefore, finds that evidence of Laurus' interactions with AJG is insufficient to create a triable issue on apparent agency, particularly because Deerfield unequivocally represented that it "never knew or understood the specifics as to why" Laurus communicated with AJG and its employee responsible for handling insurance claims did "not know anything about AJG," (R. 192-1, Bunch Dep. Tr. at 69; R. 223, Deerfield Resp. to Landmark Facts ¶¶ 46-

47). *See Bethany Pharmacal Co.*, 241 F.3d at 859-60 ("Specifically, the principal must do something to lead the third party to believe that the agent is authorized to act on its behalf."); *Lindora Med. Clinic, Inc. v. Care Charge, Inc.*, No. 92 C 4148, 1993 WL 335809, at *5 (N.D. Ill. Aug. 26, 1993) ("[T]o prevail in an apparent agency action, the party dealing with the agent must prove that the facts giving color to the agency were known to him when he dealt with the agent. If he has no knowledge of such facts, he does not act in reliance upon them and is in no position to claim anything on account of them."). The Court, therefore, concludes that Deerfield cannot defeat summary judgment by relying on a theory of apparent agency.

**B.    Reasonable Notice of Insurance Claim**

Deerfield argues that even if AJG was not Landmark's agent, the notice of the Keeping lawsuit that Landmark eventually received was nonetheless reasonable under Illinois law. (R. 222, Resp. at 6-13.) Without any triable issue as to whether AJG was Landmark's agent for purposes of accepting notice of insurance claims, there is no dispute that Landmark failed to receive actual notice of the Keeping accident and lawsuit until December 2014, approximately a month before the trial in the Keeping lawsuit commenced and five years after the Keeping lawsuit was filed. (R. 223, Deerfield Resp. to Landmark Facts ¶¶ 13, 14.) Landmark, however, received actual notice through AJG, and Deerfield does not explain how such notice complies with the Landmark policy's notice provisions, which requires Deerfield—not AJG—to notify Landmark of any insurance claims. *See Landmark II*, 2017 WL 157858, at *6-7. Notwithstanding this defect, the Court finds that even if AJG's notice to Landmark complied with the Landmark policy's notice provisions, notice at that time was not reasonable under Illinois law.

Under Illinois law,[7] "[a] provision in an insurance liability policy requiring an insured to give the insurer notice of an accident is a reasonable policy requirement, one which affords the insurer an opportunity to make a timely and thorough investigation and to gather and preserve possible evidence." *State Auto Prop. & Cas. Ins. Co. v. Brumit Servs., Inc.*, 877 F.3d 355, 357 (7th Cir. 2017). "[A]n excess carrier can require that immediate notice must be given at the time of an occurrence or accident that could create liability of the insured." *Gen. Cas. Co. of Ill. v. Juhl*, 669 N.E.2d 1211, 1214 (Ill. App. Ct. 1996). Landmark's policy did just that, as the notice provision in the Landmark policy provides that Deerfield "must" give Landmark "prompt" notice of any claim or lawsuit, without any qualifications and without regard to the potential dollar amount implicated by a claim or lawsuit. (R. 223, Deerfield Resp. to Landmark Facts ¶¶ 3-7.) Under Illinois law, "prompt" notice is interpreted to mean notice within a "reasonable time." *See Am. Family Mut. Ins. Co. v. Blackburn*, 566 N.E.2d 889, 893 (Ill. App. Ct. 1991) (interpreting "prompt" notice provision to require notice within a "reasonable time"). "The following factors may be considered in determining whether notice to an insurer has been given within a reasonable time: (1) the specific language of the policy's notice provision; (2) the insured's sophistication in commerce and insurance matters; (3) the insured's awareness of an event that may trigger insurance coverage; (4) the insured's diligence in ascertaining whether policy coverage is available; and (5) prejudice to the insurer." *W. Am. Ins. Co. v. Yorkville Nat'l Bank*, 939 N.E.2d 288, 293-94 (Ill. 2010). "Where the facts are undisputed, the reasonableness of notice to an insurer by its insured is a question of law." *Essex Ins. Co. v. Vill. of Oak Lawn*, 189

---

[7] Because the parties do not dispute that Illinois law applies and cite to Illinois law in their briefs, the Court will apply Illinois' substantive law in its analysis. *See Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) (ruling that courts "do not worry about conflict of laws unless the parties disagree on which state's law applies" (citations omitted)).

F. Supp. 3d 779, 790 (N.D. Ill. 2016) (quoting *Kerr v. Ill. Cent. R. Co.*, 670 N.E.2d 759, 766 (Ill. App. Ct. 1996)).

Applying the above factors to this case, the Court finds that Landmark's notice of a claim approximately five years after the lawsuit for that claim was filed is unreasonable as a matter of law. *See Northland Ins. Co. v. Bob Trucking II, Inc.*, No. 12-CV-10201, 2013 WL 4552986, at *3 (N.D. Ill. Aug. 27, 2013) ("Giving notice of the accident nearly two years after it occurred is not prompt."); *Phila. Indem. Ins. Co. v. 1801 W. Irving Park, LLC*, No. 11 C 1710, 2012 WL 3482260, at *7 (N.D. Ill. Aug. 13, 2012) (collecting cases and observing that "Illinois courts have held notification delays much shorter than the ten month delay at issue here unreasonable as a matter of law"). The first factor—the specific language of the policy—unambiguously requires Deerfield to provide "prompt" notice of any claim or lawsuit. This factor, therefore, weighs against Deerfield because a 5-year delay cannot be considered "prompt" under any reasonable meaning of that word. *See State Auto Prop. & Cas. Ins. Co.*, 877 F.3d at 358-59 (weighing this factor in the insurer's favor, reasoning that the insured "cannot avoid the mandatory policy language" requiring "prompt notice" of the accident). The second factor also weighs against Deerfield, because it is a construction contractor with more than 50 employees that had legal representation in the Keeping lawsuit, an insurance consultant in Laurus, and substantial experience in dealing with insurance claims. *Phila. Indem. Ins. Co.*, 2012 WL 3482260, at *8 (finding that insured was sophisticated in insurance matters because he was a "developer of a multimillion dollar condominium development" and "knew enough to engage attorneys to assist him"); *Northbrook Prop. & Cas. Ins. Co. v. Applied Sys., Inc.*, 729 N.E.2d 915, 923 (Ill. App. Ct. 2000) ("Applied, a corporation engaged in the business of developing computer software for the insurance industry, having obtained more than one commercial liability policy, and retaining in-

house and outside counsel who could have made a coverage evaluation, was not an unsophisticated insured.").

Turning to the third factor—the insured's awareness of an event that may trigger insurance coverage—this factor weighs against Deerfield because it was clearly aware of the Keeping accident and lawsuit, and it notified American States of the lawsuit shortly after it was filed. *See Sentinel Ins. Co., Ltd. v. Cogan*, 202 F. Supp. 3d 831, 839 (N.D. Ill. 2016) (ruling that this factor weighed against the insureds because they tendered notice to two other insurers), *appeal dismissed*, No. 16-3426, 2017 WL 4117415 (7th Cir. Mar. 21, 2017); *cf. MHM Servs., Inc. v. Assurance Co. of Am.*, 975 N.E.2d 1139, 1159 (Ill. App. Ct. 2012) ("The third factor favors neither party because there is no indication MHM was aware of the underlying tort before A.B. sued MHM."). With respect to the fourth factor, Deerfield did not even review the Landmark policy and instead relied entirely on Laurus to satisfy any notice requirements in the Landmark policy. (R. 192-1, Bunch Dep. Tr. at 59, 71-74; R. 192-2, Sauriol Dep. Tr. at 19.) Thus, this factor weighs heavily against Deerfield. *See MHM Servs., Inc.*, 975 N.E.2d at 1159 (finding that notice was unreasonable because the insured "did not bother to read the complaint and its insurance contract together"); *Cogan*, 202 F. Supp. 3d at 840 (finding that insureds were not diligent because their delay "was a consequence of assuming non-coverage and waiting eight months to obtain an expert to probe that assumption").

With respect to the fifth factor, which considers the prejudice to Landmark, "Illinois law does not require prejudice to the insurer where the notice provision is one of prompt notice." *Highlands Ins. Co. v. Lewis Rail Serv. Co.*, 10 F.3d 1247, 1250 (7th Cir. 1993). Even if a showing of prejudice was required, this factor would also weigh in Landmark's favor because it received notice of the Keeping lawsuit shortly before trial began. (R. 208, Deerfield MSJ

Landmark at 2, 7; R. 209, Mem. at 7-9; *see also* R. 192-1, Bunch Dep. Tr. at 252.) Consequently, Landmark could not participate in significant aspects of the Keeping lawsuit such as document discovery, depositions of key witnesses, or pushing for settlement or mediation earlier in the case, and was prejudiced as a result. *See MHM Servs., Inc.*, 975 N.E.2d at 1162 (finding that an excess insurer was prejudiced because it "was deprived of any meaningful participation in the defense until the case was in the last possible stage"). Because all factors weigh in Landmark's favor, the Court finds that the notice Landmark ultimately received was unreasonable as a matter of law. *See id.* at 1163 (finding that the insured's "late notice was inexcusable and that its breach of the notice clause defeats any right to recover under the policy" where "none of the relevant facts and circumstances favor" the insured).

To avoid this result, Deerfield argues that it was only required to provide notice to Landmark once it became aware that the Keeping claim would implicate the Landmark excess policy. (R. 222, Resp. at 8-10.) The cases Deerfield relies on involving excess insurance policies are easily distinguishable because those cases dealt with policies whose notice provisions gave the insured discretion as to when to provide notice and depended on whether the excess policy was likely to be implicated.[8] (*See* R. 209, Mem. at 3-7.) Landmark's policy, on the other hand, simply requires "prompt" notice without leaving room for the insured's discretion, (*see* R. 223,

---

[8] *See L.R. Nelson Corp. v. Great Am. Ins. Co.*, No. 06-CV-1252, 2008 WL 4391832, at *4 (C.D. Ill. Sept. 22, 2008) ("The Umbrella Policy provides as follows: 'If a claim or suit against any Insured is reasonably likely to involve this policy you must notify us in writing as soon as practicable." (internal quotation marks omitted)); *Keystone Consol. Indus., Inc. v. Emp'rs Ins. Co. of Wausau*, 470 F. Supp. 2d 873, 885 (C.D. Ill. 2007) ("Keystone's umbrella policies between 1969 and 1979 require notice when the insured has 'information from which the insured may reasonably conclude that an occurrence covered hereunder involved injuries or damages, which, in the event the insured should be held liable, is likely to involve this policy.' "); *Zurich Ins. Co. v. Walsh Const. Co. of Ill.*, 816 N.E.2d 801, 806-07 (Ill. App. Ct. 2004) (dealing with a notice provision with language that "contemplate[d] the exercise of some judgment on the part of the insured"); *Atlanta Int'l Ins. Co. v. Checker Taxi Co.*, 574 N.E.2d 22, 24 (Ill. App. Ct. 1991) ("The notice provision in Atlanta's policy requires the insured to immediately advise the Company of any accident or occurrence which appears likely to result in liability under this policy[.]" (citation and internal quotation marks omitted)).

Deerfield Resp. to Landmark Facts ¶¶ 3-7), and therefore those cases are unpersuasive. *See*

*MHM Servs., Inc.*, 975 N.E.2d at 1157 (distinguishing cases in which insurance policy language

gave the insured "discretion as to when to notify the insurer" and finding that insured "was not

contractually entitled to exercise discretion as to whether to give notice" because the policy at

issue required notice "as soon as practicable" regardless of whether the insured had reason to

believe the excess policy would be implicated). Accordingly, the Court finds that Deerfield

failed to comply with the notice provisions in the Landmark policy as a matter of law and

summary judgment is warranted in Landmark's favor.

### C.     Estoppel

Deerfield's last argument against summary judgment is that Landmark should be

estopped from denying coverage because Landmark participated in settlement negotiations and

in the defense of the Keeping lawsuit. (R. 222, Resp. at 13-14.) The parties do not dispute that

Landmark received actual notice of the Keeping lawsuit on or about December 5, 2014, through

AJG. (R. 223, Deerfield Resp. to Landmark Facts ¶ 21; R. 225, Deerfield Resp. to MSBT Facts

¶ 43.) Nor do the parties dispute that, upon receiving notice, Landmark participated in the

defense and settlement negotiations of the Keeping lawsuit from that point forward. (R. 241,

Landmark Resp. to Deerfield Add'l Facts ¶¶ 16-29.) Then, on January 29, 2015—approximately

two months after it received notice of the Keeping lawsuit—Landmark sent Deerfield a letter

reserving its rights to assert a coverage defense. (R. 225, Deerfield Resp. to MSBT Facts ¶ 55;

R. 192-1, Bunch Dep. Tr. at 167-69.)

The doctrine of estoppel applies "if the insurer initially undertakes the duty to defend

without reserving its rights, but later reserves rights or files a declaratory-judgment action."

*Essex Ins. Co. v. Structural Shop, Ltd.*, No. 15 C 2806, 2018 WL 1411071, at *6 (N.D. Ill. Mar.

21, 2018) (quoting *United Farm Family Mut. Ins. Co. v. Frye*, 887 N.E.2d 783, 791 (Ill. App. Ct. 2008)). If the doctrine applies, an insurer may be estopped from asserting a coverage defense. *Id.* "[T]he insured must establish the elements of estoppel: that he was misled by an act or statement of the insurer, he reasonably relied on the conduct or representation, and he was prejudiced thereby." *Id.* (citation and internal alteration omitted). Prejudice is found when the insurer's participation in "the defense induces the insured to surrender her right to control her own defense." *Standard Mut. Ins. Co. v. Lay*, 989 N.E.2d 591, 596 (Ill. 2013).

Deerfield's estoppel defense cannot survive summary judgment because Deerfield comes forward with no evidence that Landmark's participation in the Keeping lawsuit induced Deerfield to surrender its right to control its defense. Nor does Deerfield present evidence of any other action taken by Landmark that influenced Deerfield's defense strategy. Deerfield only argues that had "American States or Deerfield known of Landmark's intent to assert a late notice defense, American States would have approached the [Keeping lawsuit] differently and Deerfield would have insisted that American States enter into the high-low agreement." (R. 222, Resp. at 14.) Deerfield, however, must "identify clear, concise, and unequivocal evidence" that Landmark's defense of the Keeping lawsuit induced Deerfield "to surrender control of its own defense," and "[s]peculation that the insured's decision might have been different" is insufficient to defeat summary judgment. *See Essex Ins. Co.*, 2018 WL 1411071, at *8; *Great W. Cas. Co. v. Rogers Cartage Co.*, No. 00 C 6221, 2001 WL 1607608, at *8 (N.D. Ill. Dec. 12, 2001) (granting summary judgment on estoppel claim where "[the insured] . . . simply cannot prove by the clear and convincing evidence that Illinois law requires that [the insurer] usurped total control of the defense of the [underlying action] to [the insured's] prejudice or that [the insurer's] conduct with respect to the settlement negotiations otherwise had any link whatsoever to the jury verdict

ultimately entered against [the insured]"). Deerfield offers nothing more than speculation about what it would have done differently had it known Landmark's coverage position, citing only to a portion of Bunch's and Sauriol's depositions in which they state that they relied on counsel to evaluate Keeping's claims, (R. 192-1, Bunch Dep. Tr. at 141; 192-2, Sauriol Dep. Tr. at 143), and another portion of Bunch's deposition in which he states that if Deerfield had known Landmark was going to deny coverage, "it would have drastically changed [its] approach to how [it] perceived the trial." (R. 192-1, Bunch Dep. Tr. at 253-54.) Bunch, however, offers no specifics as to what Deerfield would have done differently, and his testimony is far from "clear, concise, and unequivocal evidence" of prejudice. *See Essex Ins. Co.*, 2018 WL 1411071, at *8.[9] The Court, therefore, grants summary judgment on Deerfield's estoppel claim and finds that Deerfield cannot avail itself of coverage under the Landmark policy. As a result, the Court also grants summary judgment on all of Deerfield's counterclaims against Landmark, since all of those counterclaims are premised on a finding that Deerfield is entitled to coverage under the Landmark policy. (R. 22, Am. Answer & Countercls. ¶¶ 25-28, 30-34, 36-38.)

## II.  Remaining Claims

The Court in a prior order exercised supplemental jurisdiction over Deerfield's third-party complaint pursuant to 28 U.S.C. § 1367(a), reasoning that the third-party claims "share a common nucleus of operative fact with Landmark's underlying diversity suit against Deerfield, and thus this Court has jurisdiction over these claims." *Landmark I*, 2016 WL 2977274, at *4.

---

[9] Deerfield also cites to testimony of persons not employed by Deerfield, who likewise offer no concrete changes in strategy that Deerfield would have taken had it known Landmark would deny coverage. (*See* R. 223, Deerfield Add'l Facts ¶¶ 30-31). The cited portion to Olmstead's and adjuster Lisa Cruser's testimony merely indicated that they believed Landmark would provide coverage and offer no testimony regarding a change in strategy that would have occurred had they known Landmark's coverage position. (R. 203-7, Olmstead Dep. Tr. at 169-71; R. 192-9, Cruser Dep. Tr. at 188-89, 62-63 ("I don't think we would have handled the strategy differently, but it would have depended . . . on the outcome of the discussion and what we would have done at that point.").)

Given that there are no more pending claims between Landmark and Deerfield in this case, the Court revisits its grounds for asserting subject-matter jurisdiction over Deerfield's third-party claims. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]"); *Buckeye State Mut. Ins. Co. v. Hall*, No. 2:05 CV 21 PRC, 2006 WL 3536219, at *1-2 (N.D. Ind. Dec. 6, 2006) (dismissing third-party complaint alleging only state-law claims after the court entered summary judgment against the only claim providing an independent basis for federal jurisdiction). The Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006). The party invoking jurisdiction bears the burden of establishing that jurisdiction exists. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

The Court has original jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs" and is between citizens of different states. 28 U.S.C. § 1332(a). For a party to establish diversity jurisdiction, it "must establish complete diversity, meaning that no plaintiff may be from the same state as any defendant." *Smart v. Local 702 Int'l Bhd. of Elec. Workers*, 562 F.3d 798, 803 (7th Cir. 2009) (citation and internal quotation marks omitted)); *see also Ford v. Psychopathic Records, Inc.*, No. 12-CV-0603-MJR-DGW, 2013 WL 3353923, at *3 (S.D. Ill. July 3, 2013) (noting there was no independent jurisdiction over a third-party complaint because "complete diversity among the parties" to the third-party complaint did not exist). For purposes of diversity jurisdiction, a corporation is considered to be a citizen of both the state it is incorporated in and the state where it has its principal place of business. *Dexia Credit Local v. Rogan*, 629 F.3d 612, 620 (7th Cir. 2010). The

citizenship of an individual is that individual's "domicile," which is established by the individual's presence in a state and her intent to remain there. *Nelson v. Wal-Mart, Inc.*, 63 F. App'x 920, 922 (7th Cir. 2003); *see also Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) ("[D]omicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there."). "[D]iversity of citizenship is assessed at the time the action is filed." *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991); *see also OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 218 (2d Cir. 2016) ("Diversity is measured as of the time the action is brought, and thus a post-filing change of citizenship does not destroy diversity jurisdiction.").

Third-party plaintiff Deerfield is deemed to be a citizen of Illinois for purposes of diversity jurisdiction because it is an Illinois corporation with its principal place of business in Illinois. (R. 20, Deerfield Answer ¶ 8.) The record demonstrates that third-party plaintiff Graff is domiciled in Illinois. (*See* R. 20, Deerfield Answer ¶ 9; R 203-8, Graff Dep. Tr. at 5.) Thus, for there to be complete diversity, none of the third-party defendants may be a citizen of Illinois. *See Smart*, 562 F.3d at 803; *Ford*, 2013 WL 3353923, at *3. The record demonstrates, however, that third-party defendant Olmstead is domiciled in Illinois and therefore an Illinois citizen for purposes of diversity jurisdiction. (R. 203-7, Olmstead Dep. Tr. at 9-28.) In addition, the record reflects that another third-party defendant, MSBT, was merely an arm of Liberty Mutual Insurance Company—a corporation—and that MSBT's principal place of business was in Illinois, (R. 203-7, Olmstead Dep. Tr. at 27; MSBT Answer ¶¶ 5, 10, 13, 15-16; R. 61, Mot. to Dismiss at 2, 4). Therefore, MSBT—which is one and the same as Liberty Mutual[10]—is a corporation that is a citizen of Illinois because it maintained its principal place of business in

---

[10] *Charlton v. Wells Fargo Bank, N.A.*, No. CV 11-6572, 2016 WL 7338527, at *6 (D.N.J. Dec. 19, 2016) (noting that a "captive" law firm and the insurer that it works for are one in the same).

Illinois. *See Dexia Credit Local*, 629 F.3d at 620. Accordingly, there is no complete diversity between the parties sufficient for diversity jurisdiction because third-party defendants MSBT and Olmstead have the same citizenship as third-party plaintiffs Deerfield and Graff. *See Ford*, 2013 WL 3353923, at *3; *cf. Lampe v. Genuine Parts Co.*, 463 F. Supp. 2d 928, 934 (E.D. Wis. 2006) (finding basis for independent diversity jurisdiction over third-party complaint because there was complete diversity between the third-party plaintiff and third-party defendants). Nor is there a basis for federal question jurisdiction because the remaining claims in Deerfield's third-party complaint are state-law claims, (R. 21, Third-Party Compl. ¶¶ 39-49, 58-61). *See* 28 U.S.C. § 1331.

Thus, the only remaining grounds for federal jurisdiction in this case is the Court's previous ruling that Deerfield's state law claims fall within the Court's supplemental jurisdiction pursuant to § 1367. *See Landmark I*, 2016 WL 2977274, at *4 ("[B]ecause Deerfield's claims against MSBT and AJG are not based on federal law, and because there is no diversity between the parties, the only potential basis for jurisdiction is supplemental jurisdiction."). "[D]istrict courts," however, "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367. The decision whether to decline supplemental jurisdiction is squarely within the Court's discretion. *Miller v. Herman*, 600 F.3d 726, 738 (7th Cir. 2010). "When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims, . . . which the plaintiff can then prosecute in state court." *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010). "The presumption is rebuttable, but it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state

law." *RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012) (citation and internal quotation marks omitted)). To overcome the presumption in favor of relinquishing the Court's jurisdiction over supplemental, state-law claims, the Court factors whether: (1) the statute of limitations has run on the pendent claims, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) it is absolutely clear how the pendent claims can be decided. *Id.* at 480.

The first circumstance does not apply here, as there is no danger of the statute of limitations running on Deerfield's state-law claims against American States and MSBT. *See* 735 ILL. COMP. STAT. 5/13-217 (giving plaintiff one year from the dismissal of state law claims in federal court on jurisdictional grounds to re-file those claims in state court); *Norris v. Certified Warehouse Foods*, No. 14-CV-1651, 2018 WL 925131, at *6 n.7 (N.D. Ill. Feb. 16, 2018) (noting that Illinois law gives plaintiffs a year to re-file state law claims that are dismissed in federal court for lack of jurisdiction). Deerfield's legal malpractice claim against MSBT, however, is also subject to a statute of repose, and "may not be commenced in any event more than 6 years after the date on which [MSBT's] act or omission occurred." 735 ILL. COMP. STAT. 5/13-214.3(c). There is no evidence, though, that Deerfield's claim for legal malpractice accrued earlier than the date the jury entered an adverse judgment against Deerfield in the Keeping lawsuit, which occurred at the very end of 2014. *Warnock v. Karm Winand & Patterson*, 876 N.E.2d 8, 13 (Ill. App. Ct. 2007) ("[A] cause of action for legal malpractice will rarely accrue prior to the entry of an adverse judgment, settlement, or dismissal of the underlying action in which plaintiff has become entangled due to the purportedly negligent advice of his attorney." (citation omitted)), *as modified on denial of reh'g* (Sept. 7, 2007). Thus, if it acts diligently,

Deerfield should have more than enough time to re-file its claim against MSBT in state court before the deadline in Illinois' statute of repose would lapse, which would likely occur in 2020 at the earliest. *See* 735 ILL. COMP. STAT. 5/13-214.3(c). The Court, therefore, concludes that there is no danger of a statute of limitation period running such that the Court should retain jurisdiction over the parties' supplemental, state-law claims. *See RWJ Mgmt. Co.*, 672 F.3d at 480.

Turning to whether substantial judicial resources have already been committed to this lawsuit, "[e]valuating considerations of judicial efficiency and duplication of judicial effort is not just a matter of toting up months or motions or the page counts of judicial orders." *Id.* at 481. "Rather, concerns about judicial economy have their greatest force when significant federal judicial resources have already been expended to decide the state claims, or when there is no doubt about how those claims should be decided." *Id.* In this case, there has been no substantial effort to resolve Deerfield's state-law claims against American States and MSBT, as the Court's previous review of the record evidence in this case was directed towards the coverage dispute between Deerfield and Landmark. *See Landmark II*, 2017 WL 157858, at *5-12 (addressing only the coverage dispute between Deerfield and Landmark).[11] The parties finished fact and expert discovery just before briefing the motions for summary judgment now before the Court, and, although this case is 3 years old, the Court has yet to consider record evidence relating to Deerfield's third-party claims, including but not limited to depositions of several expert witnesses testifying on the merits of those claims. (*See* R. 173, Mot.; R. 176, Min. Entry.) Consequently, concerns related to duplication of effort or judicial economy do not overcome the presumption that this Court should relinquish jurisdiction over Deerfield's third-party claims and

---

[11] The Court has only reviewed Deerfield's allegations against MSBT and Olmstead—not any record evidence—and has not had any occasion to consider dispositive arguments relating to Deerfield's claims against American States until now. *See Landmark Am. Ins. Co. v. Deerfield Constr., Inc.*, No. 15 C 1785, 2016 WL 2977274, at *5-6 (N.D. Ill. May 19, 2016).

32

minimize its intrusion into purely state-law matters. *See Kissinger v. Fort Wayne Cmty. Sch.*, 293 F. Supp. 3d 796 (N.D. Ind. 2018) (dismissing supplemental state law claims because "in reaching summary judgment on [the plaintiff's federal claims], the Court has not decided any dispositive issues relating to his [state law] claims").

With respect to the final factor—whether it is absolutely clear how the pendent claims can be decided—the Court finds that there are significant factual disputes between the parties that render any resolution of Deerfield's third-party claims unclear at this point in the litigation. Deerfield's claims related to American States' failure to settle depends, in part, on whether it was likely that Deerfield would be found liable and whether it was likely that any verdict against Deerfield would exceed the limits of the American States policy. *See SwedishAmerican Hosp. Ass'n of Rockford v. Ill. State Med. Inter-Ins. Exch.*, 916 N.E.2d 80, 101 (Ill. App. Ct. 2009) (denying summary judgment because "[w]hether it was likely that Dr. Hecht would be found liable and whether the amount of potential damages exposed Dr. Hecht to personal liability remain disputed material issues of fact based on the record before us"). The parties dispute whether Deerfield's counsel believed that the jury might award Keeping an amount exceeding the coverage limits on the American States insurance policy. (R. 246, Am. States. Resp. to Deerfield Facts ¶ 8.) Additionally, Keeping's counsel asked that the jury return a verdict of $2.6 million against Deerfield, (*id.* ¶ 25), and issues remain as to whether the evidence presented at trial was likely to persuade the jury to award Keeping in excess of the American States policy's limits such that American States should have accepted Keeping's high-low settlement offer. (*Id.* ¶¶ 22-24, 27-28.)

Nor can the Court clearly resolve the negligence claim against MSBT in its entirety as a matter of law for lack of proximate cause, legal duty, or by way of the doctrine of judgmental

immunity as MSBT urges, (R. 201, Mem. at 10-12), because the parties dispute whether MSBT made informed, good-faith tactical decisions during the Keeping lawsuit or instead failed to competently represent Deerfield, (R. 225, Deerfield Resp. to MSBT Facts ¶¶ 38, 40-41; R. 225, Deerfield Add'l Facts ¶¶ 1-7). *See Nelson v. Quarles & Brady, LLP*, 997 N.E.2d 872, 889 (2013 Ill. App. Ct.) (noting that pretrial disposal of a malpractice claim based on the doctrine of judgmental immunity is inappropriate when the record is unclear as to whether an attorney "actually 'decided' not to assert [his or her client's] other, allegedly meritorious, defenses, as opposed to [the attorney] simply being unaware of, or overlooking, the existence of any other legal argument."); *see also McLeod v. Pignatelli*, No. 16 CV 06784, 2017 WL 1178640, at *3 (N.D. Ill. Mar. 30, 2017) (noting that a question related to whether attorney breached duty of care to client "is a question for the finder of fact to decide"); *Nettleton v. Stogsdill*, 899 N.E.2d 1252, 1261 (Ill. App. Ct. 2008) ("The issue of proximate causation in a legal malpractice setting is generally considered a factual issue to be decided by the trier of fact" (citation and internal quotation marks omitted)). All factors weigh against retaining jurisdiction of the remaining claims in this case, and therefore, the Court will dismiss the remaining claims in this lawsuit without prejudice. *Energy Labs, Inc. v. Edwards Eng'g, Inc.*, No. 14 C 7444, 2017 WL 818855, at *4 (N.D. Ill. Mar. 2, 2017) (dismissing supplemental claims without prejudice after the court "considered judicial economy, convenience, fairness, and comity, and [found that] all counsel in favor of relinquishing supplemental jurisdiction"). Because the Court declines to exercise jurisdiction over the third-party complaint, Deerfield's motion to amend the third-party complaint and all other pending motions for summary judgment are denied as moot.

## CONCLUSION

For the foregoing reasons Landmark's motion for summary judgment (R. 191) is GRANTED. The remaining claims in this lawsuit are dismissed without prejudice for lack of jurisdiction, and, therefore, all other pending motions (R. 198; R. 200; R. 205; R. 208; R. 214) are DENIED as moot.

ENTERED:

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: May 3, 2018**